**MARTIN et, Plaintiffs-Appellees, v. SHARON STEEL CORPORATION, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3553.   Decided April 8, 1953.

Traxler & Beil, Youngstown, for plaintiffs-appellees.

Manchester, Bennett, Powers & Ullman, Youngstown, for defendant-appellant.

## OPINION

Per CURIAM.

Defendant, a corporation amenable to the provisions of the Workmen's Compensation Act and a self insurer thereunder, appealed to this court on questions of law from a judgment of the court of common pleas entered upon a jury verdict returned for plaintiffs, the widow and minor child of George Martin, upon whom they were wholly dependent for support at the time of his death on February 4, 1946, in her action on appeal to that court from the disallowance of her claim for benefits under the Workmen's Compensation Act of Ohio.

Plaintiffs' application for compensation was denied by the Industrial Commission of Ohio on rehearing on the ground that the death of George Martin, designated herein as decedent, was not the result of an injury sustained in the course of and arising out of his employment with defendant corporation.

While crossing ravel bars in the defendant's plant on April 3, 1944, decedent allegedly injured his left heel, which injury he reported to defendant's plant dispensary on the morning of April 4, 1944, when he went there to have dressed a finger which was injured some days before.

Decedent's medical history discloses a tubercular abscess in the vicinity of the right clavicle and right side of the neck and swelling in both groins for about a month prior to April 3, 1944; that a physician treated decedent for the tubercular condition of the neck and region of the clavicle, following which treatment he returned to work for defendant; that on July 17, 1944, decedent was admitted to the Youngstown Hospital, where he remained a patient until discharged therefrom on November 22, 1944; that on November 28, 1944, he became a patient in the Mahoning County Tuberculosis Sanitorium, where his condition was diagnosed as "tubercular pleurisy with effusion, left; tubercular cervical adenitis; tubercular ankle, left"; that he was discharged from such sanitorium on November 27, 1945, and admitted to St. Elizabeth's Hospital, where his illness was diagnosed as "tuberculosis of left foot and ankle; multiple TB foci in body," and where his left leg was amputated on December 1, 1945; that he was discharged from the Youngstown Hospital on December 27, 1945, and on the same day readmitted to the Mahoning County Tuberculosis Sanitorium, where he died on February 4, 1946, of "pulmonary TB—duration two years."

It is the contention of defendant that decedent's death was not the result of an injury sustained in the course of and arising out of his employment with defendant, nor in any manner

connected therewith; and that the trial judge erred to its prejudice in overruling its motions for judgment to be entered in its favor made at the close of plaintiffs' case and at the conclusion of all the evidence, and for judgment to be entered in its favor notwithstanding the verdict of the jury returned against it, and for a new trial.

Defendant waived its right to rely on the claimed error that the trial judge erred to its prejudice in overruling its motion for a verdict to be directed in its favor at the close of plaintiffs' case, when it accepted the ruling of the court and proceeded with its defense and introduced evidence in its own behalf. **Halkias, Appellee, v. Wilkoff Co., Appellant, 141 Oh St 139.**

Over defendant's objection the trial judge permitted plaintiffs' medical witnesses, an orthopedic specialist and a specialist in tuberculosis respectively, to answer the following hypothetical question:—

"Q. Dr. Kirkwood, I would like to ask you a hypothetical question, and I want you to consider the following facts and no others.

"Assume that on April 3, 1944, George Martin, a man about fifty-five years of age, was, and had been for some years, employed by the Sharon Steel Corporation. On that day, while at work, near quitting time, he suffered an injury to his left heel which caught. while he was crossing over ravel bars at the mill. When Mr. Martin returned from the shift to his home that night, as he came into the kitchen he winced as he stepped on his foot and favored the one foot. The next day his left ankle was sore and had puffed quite a bit more than the preceding night, the swelling had become more pronounced. That same day, April 4, 1944, he went to the company hospital where his ankle was examined. He kept on trying to work and reported to the company's plant dispensary numerous times between April 4, 1944, and May 25th of that year for treatment of that ankle.

"I shall show you, Doctor, at this time what has been previously introduced in evidence and marked Claimant's Exhibit A and B, being paper writing entitled 'Accident Report' and 'Dressing Record,' and shall ask you to examine them and indicate to us when you have done so.

"A. O. K.

"Q. You have finished, have you, Doctor?

"A. Yes, sir.

"Q. Now, about twenty-six days after Mr. Martin's first visit to the plant dispensary an abscess showed up in his left cervical region, and on May 1, 1944, he consulted a physician

about that. He was in St. Elizabeth's Hospital several days from this condition, and then went back to the plant hospital for treatment of his left ankle which was still swollen. Finally he entered Youngstown Hospital on July 17, 1944, where he remained until November 22, 1944, during part of which time his leg was in a cast and there was a draining infection on the inside of the left ankle.

"On the following November 28th he was admitted to the Mahoning Tuberculosis Sanitorium with a diagnosis of tubercular ankle, left. He was discharged from that institution on November 29, 1945, to go to St. Elizabeth's Hospital for surgery. On December 1, 1945, his left leg was amputated, followed by a development of a widespread pulmonary tuberculosis with left chest emphysema and inflammation of the cervical and inguinal lymph nodes. He was readmitted to Mahoning Tuberculosis Sanitorium on December 27, 1945, and expired at 2:45 o'clock a. m. on February 4, 1946, the cause of his death being given as pulmonary tuberculosis.

"I wish, Dr. Kirkwood, that you would look at Claimant's Exhibit E-1 and F-1 at this time, each being a record of the patient's case history at Mahoning Tuberculosis Sanitorium, and indicate to us when you have finished your examination.

"A. O. K.

"Q. Before April 3, 1944, Mr. Martin was a busy and energetic man, taking care of all the repairs on his property besides keeping another home in repair, such work including painting, excavating, and in addition he would fix electrical appliances for friends, and he also had a garden in the previous season, and Mr. Martin worked regularly and consistently at Sharon Steel Corporation, and his general health was good before this 3rd day of April, 1944, but soon thereafter his vigor showed a marked tendency to go down, he showed a lack of interest in his home, and he made no major repairs to it from that time on. He sat around and took things easy, lying or relaxing in the sun, favoring his left ankle and not moving around much until he was hospitalized.

"Dr. Kirkwood, taking all of the information, all of the foregoing assumed facts and nothing else into account, and considering also your examination of the patient and your findings and diagnosis to which you have testified here today, do you have an opinion with reasonable medical certainty as to whether or not there was a causal relationship between the injury as described to you, the developments that followed, and Mr. Martin's death from pulmonary tuberculosis on February 4, 1946. First, do you have an opinion?"

To the hypothetical question propounded to Dr. Kirkwood

the defendant interposed its objection, stating to the court the grounds thereof, and a considerable discussion followed. After this discussion the court stated:—

"I am going to admit it, and give exceptions. He can give that answer."

The doctor thereupon answered "I do." Counsel thereupon inquired as to what his opinion was, and the objection to that question having been overruled, the doctor answered:—

"A. Well, I believe in such a case that an injury can lead to the development of tuberculosis of the bone.

"Q. What is your opinion, based upon the facts in the hypothetical question, as to the probability in this particular instance of Mr. Martin?

"A. Sir, **I think it probably happened that way.**

"Q. Do you care to state, Dr. Kirkwood, the reasons for your opinion?"

Objection being interposed and overruled the doctor answered:—

"A. Well, the way I look at the thing is this: Usually the man has an infection somewhere in his body, and an injury lowers the resistance of that particular part, the germ enters there, disease follows. It may be tuberculosis, it may be other infections, depending on what germs are in the body at the time of the accident.

"Q. What is modern medical opinion, Dr. Kirkwood, if you know, as to the presence of existence or absence of tubercular germs in adult human beings?"

Objection to the question having been overruled the question was supplemented as follows:—

"Q. Confine it, Doctor, to your own opinion, based upon your own experience and practice.

"A. Well, my experience has shown me that a large percentage of the adult population are infected with tuberculosis.

"Q. What is the fact, from your own experience, as to whether or not trauma or injury may or will cause an activation of such a condition?

"A. It will.

"Q. Well, Dr. Kirkwood, you have given us your reasons, as I understand, as to the cause of the development of a tubercular condition in the bones of Mr. Martin's left ankle.

"A. Yes.

"Q. Now, what connection, if any, in your opinion, is there between that condition and Mr. Martin's death on February 4, 1946?"

After further discussion upon objection to the question the court overruled the objection and the witness answered:—

"A. Well, once a person acquires his tuberculous infection, it may spread to any part of his body and eventually end in death. Is that what you wanted?"

Later the following question was propounded to Dr. Kirkwood:—

"Q. Well, Dr. Kirkwood, let me ask you this further question, based upon the assumed facts in the hypothetical question which I shall not repeat, unless you ask me to, and no others: Do you have an opinion as to whether or not there was a probable causal relationship between the development of tuberculosis in Mr. Martin's left ankle, following that injury of April 3, 1944, and his death from pulmonary tuberculosis on February 4, 1946?"

After overruling an objection to the question the witness answered:

"A. I do.

"Q. What is that opinion, Doctor?"

After overruling the objection to that question the doctor answered:—

"A. I really answered that in the preceding question when I said that any tuberculous infection, no matter where it is in the body, can spread to any part of the body and eventually lead to death. I think that answers the question. If you have an infection, it may go to the lungs, the meninges or any part of your body. It is in the blood stream."

Defendant's objection to such question is bottomed on the fact that such question contains the following erroneous statement:—

"Now, about twenty-six days after Mr. Martin's first visit to the plant dispensary (which was April 4, 1944) an abscess showed up in his left cervical region, and on May 1, 1944 he consulted a physician about that."

Defendant's objection to such question is further bottomed on the ground that:—

"The question merely asked for an opinion from each medical witness '* * * with reasonable medical certainty as to whether or not there was a causal relationship between the injury as described to you, the developments that followed, and Mr. Martin's death from pulmonary tuberculosis on February 4, 1946' (R - 112 and R - 148). Nowhere in the question (or elsewhere in the record, it might be added) are the medical witnesses asked for, or do they give, their opinion as to whether or not Martin's death was the direct and proximate result of the alleged trivial injury to his heel. The record is bare of any evidence at all that Martin's death was the direct and proximate result of the alleged injury. Indeed the

doctors don't even say there was a probable causal connection. It is clear beyond all cavil that Dr. Kirkwood was unwilling to go further than to say that the tubercular ankle was probably due to the alleged injury and that the tubercular ankle possibly was a cause of Martin's death. (R. 120-123.) The testimony of Dr. Golden on cross-examination utterly destroys plaintiffs' case, for he testified that it was just as probable that Martin's pulmonary tuberculosis was caused by the tubercular condition in the cervical and inguinal regions (which existed before the T. B. in the ankle) as by the tubercular ankle; or as he put it 'nobody can tell you exactly which one was the direct cause' (R - 150)."

Defendant contends:—

"That the Court should have sustained its objection to the hypothetical question asked of Dr. Kirkwood and Dr. Golden, which in turn would have resulted in no evidence of any causal connection, much less direct causal connection, between the alleged injury and death, and would have required a directed verdict. Defendant further contends that regardless of the correctness or incorrectness of the court's ruling on defendant's objection to the hypothetical question, the evidence presented by plaintiffs failed completely to prove Martin's death was the direct or proximate result of the alleged injury to the heel."

We find in the record evidence of the facts stated in the hypothetical question, and that such question was proper, and that the answer of the doctor was sufficient to send the case to the jury for its finding that the injury suffered by Mr. Martin on the third day of April, 1944, had a direct causal relationship to the death which occurred in 1946.

In this connection it may be observed that if the defendant's evidence brought forth facts differing from those in the hypothetical question propounded defendant would be permitted to propound a hypothetical question based upon such facts, but that plaintiff could not be precluded from propounding a hypothetical question upon the facts most favorable to him, as shown by the record.

The answer of the witness, which we have emphasized above, "I think it probably happened that way" required the submission of the case to the jury, and the trial court was not in error in overruling defendant's motions for judgment in its favor or in overruling defendant's motion for a new trial, and this court being unable to find that the verdict and judgment are against the manifest weight of the evidence or contrary to law, the judgment must be and is affirmed.

GRIFFITH, PJ, PHILLIPS & NICHOLS, J, concur.